THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**CORTNEY H.,**

       **Plaintiff,**

v.                                         Civil Action 2:22-cv-2401
                                          Magistrate Judge Kimberly A. Jolson

**COMMISSIONER OF
SOCIAL SECURITY,**

       **Defendant.**

## OPINION AND ORDER

Plaintiff, Cortney H., brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI"). For the reasons set forth below, the Court **OVERRULES** Plaintiff's Statement of Errors (Doc. 12) and **AFFIRMS** the Commissioner's decision.

**I.    BACKGROUND**

Plaintiff filed her application for SSI on November 19, 2019, alleging that she was disabled beginning December 15, 2018, due to right leg 14 screws from a car accident, left leg 7 screws from a car accident, rods in both legs, bipolar disorder, anxiety, and depression. (R. at 221–27, 239). After her application was denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held a telephone hearing on August 12, 2021. (R. at 50–75). The ALJ denied benefits in a written decision on September 3, 2021. (R. at 16–36). That became the final decision of the Commissioner when the Appeals Council denied review. (R. at 1–7).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on June 7, 2022 (Doc. 1), and the Commissioner filed the administrative record on August 22, 2022 (Doc. 9). The matter has been briefed and is ripe for consideration. (Docs. 12, 14, 15).

    **A.  Relevant Statements to the Agency and Hearing Testimony**

The ALJ summarized Plaintiff's statements to the agency and the testimony from Plaintiff's hearing as follows:

> *** While she reports that she does spend time with others, at times playing games, she also notes difficulty getting along well in relationships (Exhibit 5E). *** [Plaintiff] reported that her mind "wanders a lot" (Exhibit 5E). She indicated that she followed written instructions "pretty good," but she did not do as well with spoken instructions (Exhibit 5E).

(R. at 23).

> [Plaintiff] reported that her conditions limited her ability to perform prolonged activities including standing, sitting and walking (Exhibit 5E). She testified that she suffered from chronic pain that interfered with her ability to work full time on a consistent basis.

(R. at 25).

**B. Relevant Medical Evidence**

The ALJ summarized Plaintiff's medical records as to her physical issues as follows:

> [Plaintiff] has mild to moderate degenerative disc disease of the lumbar spine. Symptoms include back pain and involuntary spasm with palpation (Exhibit 5F). Radiology showed slight levoscoliosis and minimal degenerative changes (Exhibits 12F, page 23; and 16F, pages 216, 365, and 582). Physical examination has revealed normal strength and sensation. [Plaintiff] is documented to be neurologically intact and straight leg raise has proven unremarkable (Exhibits 5F, pages 5 and 9; 10F, pages 26 and 79; 12F, page 336; and 16F). [Plaintiff]'s symptoms have been managed conservatively. She has not required surgical intervention or pain management for her alleged back pain.
>
> In December 2018, [Plaintiff] had a motor vehicle accident wherein she sustained bilateral tibial fractures. Radiology of the lower extremities showed comminuted, displaced fractures of the proximal metaphysis of the right tibia and fibula and a proximal tibia fracture with mild varus alignment and some comminution (Exhibit 16F, pages 563 and 568). The injuries required multiple surgeries including open reduction and internal fixation (Exhibit 2F). Rod and screw insertion, and bone grafting have been completed. These sustained lower extremity injuries with surgical intervention required about eight months of non-weight-bearing status. In addition to operative procedures, [Plaintiff] has been treated with physical therapy and pain medications. Ongoing symptoms of these injuries include pain; slightly reduced strength, characterized as 4/5; some decreased extension and flexion; some joint swelling; and some antalgic gait (Exhibits 5F, page 9; 6F, page 2; and 17F, pages 38 and 51). However, radiology confirmed healing of fractures; [Plaintiff]'s gross motor and sensory function were intact; and she was noted to be recovering

as expected (Exhibit 17F, pages 37, 38, and 51). Her serious leg injuries have responded well to treatment and she has remained stable post-recovery. The record does reflect some abnormal or antalgic gait, though she remains able to ambulate effectively with the use of a cane (Exhibits 5F, 6F, 18F and 22F), and benefits from elevating her legs to footstool level when seated.

The record also reflects ongoing reports of constant pain, often characterized as an 8/10 to 10/10 (Exhibits 6F, 12F, 15F, 16F, and 19F). ***

(R. at 25–26).

**C. The ALJ's Decision**

The ALJ found that Plaintiff has not engaged in substantial gainful employment since November 19, 2019. (R. at 21). The ALJ determined that Plaintiff has the following severe impairments: osteoarthritis of the knees with history of traumatic bilateral tibia fractures, status-post surgery; degenerative disc disease of the lumbar spine; affective disorder; anxiety disorder; and posttraumatic stress disorder. (*Id.*). The ALJ, however, found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (*Id.*).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ found that:

After careful consideration of the entire record, the [ALJ] finds that [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) within the following parameters: She can lift, carry, push and/or pull 10 pounds occasionally and less than 10 pounds frequently. She can sit for six hours in an eight-hour workday and stand and/or walk for two hours in an eight-hour workday, with an allowance for use of a cane when walking. She must alternate from sitting to standing or walking for two to three minutes every hour, and must alternate from standing or walking to sitting for two to three minutes after every half-hour, always with capacity to remain on task during all position changes, some of which would be covered by time off task and typical work breaks. When seated, she must be able to elevate legs to footstool level. She can use foot controls occasionally. [Plaintiff] can climb ramps and stairs and stoop occasionally, but she can never climb ladders, ropes, or scaffolds, balance (navigate uneven or slippery terrain), kneel, crouch or crawl. She can never work at unprotected heights, never in proximity to moving mechanical parts of dangerous machinery, and never operating a motor vehicle. She can work in weather, humidity, wetness, dust, odors, fumes and pulmonary irritants occasionally. She can never work in extreme cold,

extreme heat, or vibration. She can work in no louder than moderate noise. There should be no exposure to flashing, glaring or strobing lights, although typical office fluorescent lights are endurable without restriction. She cannot perform work requiring complex tasks, or high production rate or fast-paced work. She can occasionally interact with supervisors, coworkers and the public, but she cannot perform teamwork or customer service work. She is able to tolerate only a few changes in a routine work setting defined as follows: she should not be expected to adapt to the performance of new and unfamiliar duties as primary work tasks without orientation (i.e., not a self-starter). In addition to normal breaks, she would be off task 15 percent of time in an eight-hour workday.

(R. at 24).

Upon "careful consideration of the evidence," the ALJ found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. at 25).

Plaintiff is unable to perform her past relevant work as a fast-food worker or sandwich maker. (R. 29). Relying on the vocational expert's testimony, the ALJ concluded that considering her age, education, work experience, and the above RFC, Plaintiff could perform jobs that exist in significant numbers in the national economy, such as a folder, food sorter or a polisher. (R. at 30). He therefore concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, at any time since November 19, 2019. (R. at 31).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

**III. DISCUSSION**

In her Statement of Errors, Plaintiff contends that the ALJ failed to include all of the mental health limitations opined by the state agency psychologists, Paul Tangeman, Ph.D. and Cynthia Waggoner, Psy.D. (Doc. 12 at 7–10). Plaintiff also contends that even though the ALJ conceded that Plaintiff needs to use a cane, he failed to appreciate the extent to which the assistive device was medically necessary. (*Id.* at 10–12). Finally, Plaintiff contends that the ALJ violated 20 C.F.R. § 404.1520c during his evaluation of the medical source statements completed by treating certified nurse practitioner, Rajene Fox, APRN, CNP, and treating physician's assistant, Todd Gibson, PA-C, by failing to properly evaluate their opinions for their consistency and supportability. (*Id.* at 12–17).

The Commissioner counters that in crafting Plaintiff's RFC, the ALJ properly explained the persuasiveness of the medical opinions and prior administrative medical findings. The Commissioner also says that the ALJ did not err in his limitations regarding Plaintiff's use of a cane because the ALJ already precluded her from balancing. (Doc. 14).

**A. Evaluation of Medical Source Opinion Evidence**

5

Plaintiff's first and third argument will be taken together. In the first, Plaintiff argues that ALJ failed to include all of the mental health limitations opined by the state agency psychologists, Drs. Tangeman and Waggoner. Plaintiff also contends that the ALJ violated 20 C.F.R. § 404.1520c during his evaluation of the medical source statements completed by Ms. Hardy's treating certified nurse practitioner, Ms. Fox, and her treating physician's assistant, Mr. Gibson by failing to properly evaluate their opinions for their consistency and supportability. (Doc. 12 at 12–17).

A claimant's RFC is an assessment of "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1) (2012). A claimant's RFC assessment must be based on all the relevant evidence in her or her case file. *Id.* The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings.[1] 20 C.F.R. § 416.913(a)(1)– (5). Regarding two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [Plaintiff]'s medical sources." 20 C.F.R. § 416.920c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with [Plaintiff]"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other

---

[1] The regulations define prior administrative findings:

> A prior administrative finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see § 416.1400) in your current claim based on their review of the evidence in your case record . . .

§ 416.913(a)(2), (5).

6

evidence in the claim or an understanding of [the SSA's] disability programs policies and evidentiary requirements." § 416.920c(c)(1)–(5). Although there are five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered. § 416.920c(b)(2). And although an ALJ may discuss how he or she evaluated the other factors, he or she is not generally required to do so. *Id*. If, however, an ALJ "find[s] that two or more medical opinions or prior administrative findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ will] articulate how [he or she] considered the other most persuasive factors . . . . . " § 416.920c(b)(3).

At bottom, the role of the ALJ is to articulate how she considered medical opinions and how persuasive she found the medical opinions to be. *Holston v. Saul*, No. 1:20-CV-1001, 2021 WL 1877173, at *11 (N.D. Ohio Apr. 20, 2021), *report and recommendation adopted*, No. 1:20 CV 1001, 2021 WL 1863256 (N.D. Ohio May 10, 2021). The role of the Court is not to reweigh the evidence, but to make sure the ALJ considered the proper factors and supported her conclusion with substantial evidence. *Id.,* at *14.

### 1. *State Agency Psychologists' Medical Opinions*

In discussing the state agency psychologists' opinions, the ALJ found:

> The State agency psychological consultants' mental assessments in Exhibits 2A and 4A finding moderate limitations in interacting with others; concentrating, persisting and maintaining pace; and adapting or managing oneself are persuasive. However, as has been discussed, the totality of the evidence supports greater limitations in understanding, remembering and applying information.

(R. at 29). As it relates to her mental health, the ALJ found that Plaintiff:

> cannot perform work requiring complex tasks, or high production rate or fast-paced work. She can occasionally interact with supervisors, coworkers and the public, but she cannot perform teamwork or customer service work. She is able to tolerate only a few changes in a routine work setting defined as follows: she should not be expected to adapt to the performance of new and unfamiliar duties as primary work tasks without orientation (i.e., not a self-starter). In addition to normal breaks, she

would be off task 15 percent of time in an eight-hour workday. (R. at 24). But the state psychologists opined that Plaintiff was "capable of simple and some moderately complex tasks in a static environment without strict time or production quotas"; she was "capable of superficial and intermittent contact with coworkers and supervisors, should not be required to work with the general public"; and that "changes should be infrequent and easily explained." (R. at 79–83, 91–93). Plaintiff asserts that the ALJ had to explain any deviations in the RFC from the state psychologists' opinions that Plaintiff could not interact with the general public and was limited to superficial interactions with coworkers and supervisors. (Doc. 12 at 9 (citing R. at 83, 92)). In other words, Plaintiff says the ALJ did not sufficiently discuss the supportability and consistency factors in evaluating the state psychologists' medical opinion, as required by § 416.920c(b)(2).

Plaintiff correctly identifies a slight distinction between the ALJ's RFC as it relates to public interactions and the state psychologists' opinions. Namely, the ALJ determined that Plaintiff was moderately limited in her interactions with others and accounted for this by limiting Plaintiff "to no more than occasional interaction[s] with supervisors, coworkers, or the public in work void of teamwork and customer service." (R. at 23). The state psychologists opined that Plaintiff had a moderate limitation in her interactions with others and accounted for this by suggesting that she "not be required to work with the general public." (*Id.* at 83, 92).

While the ALJ found the state psychologists' opinions "persuasive," (*id.* at 29), he did not word-for-word copy their medical opinions in his RFC determination. But he is not required to do so. *Cooper v. Comm'r of Soc. Sec.*, No. 2:18-CV-67, 2018 WL 6287996, at *5 (S.D. Ohio Dec. 3, 2018), *report and recommendation adopted*, No. 2:18-CV-67, 2019 WL 95496 (S.D. Ohio Jan. 3, 2019) ("Certainly, an ALJ is not required to mirror or parrot medical opinions verbatim.") (citing *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009)). And, ultimately, it is the

8

ALJ's role, not a physician's, to determine the RFC. *Borgan v. Comm'r of Soc. Sec.*, No. 2:20-CV-6166, 2022 WL 109346, at *6 (S.D. Ohio Jan. 12, 2022), *report and recommendation adopted sub nom. Timothy Alan B. v. Comm'r of Soc. Sec.*, No. 2:20-CV-6166, 2022 WL 2612101 (S.D. Ohio Jan. 27, 2022). As such, the Undersigned will not disturb the ALJ's decision, particularly when Plaintiff has not shown how this difference in wording between the RFC and the medical opinions would impact the ultimate disability determination.

Turning briefly to Plaintiff's assertion that the ALJ did not adequately include a limitation of superficial interactions with coworkers and supervisors in the RFC determination as opined by the state agency psychologists, the Undersigned also finds this argument without merit. Plaintiff says that the ALJ's limitation of no teamwork refers to the quality of interaction with coworkers but fails to address the depth of interaction with supervisors, despite the state psychologists opining that Plaintiff was capable of only superficial interactions with coworkers and supervisors. (Doc. 12 at 9). Again, the ALJ "is not required to recite the medical opinion of a physician in his residual functional capacity finding," *Poe*, 342 F. App'x at 157, and the ultimate question the Court must address in its evaluation of the ALJ's decision is whether she meaningfully considered the type of interactions Plaintiff can have in a work environment. *Andrea B. v. Comm'r of Soc. Sec.*, No. 3:22-CV-055, 2023 WL 128288, at *7 (S.D. Ohio Jan. 9, 2023). Here, the Undersigned is persuaded that the ALJ sufficiently addressed and supported the level of interactions Plaintiff could have with supervisors.

### 2. *Ms. Fox's and Mr. Gibson's Medical Opinions*

Plaintiff similarly argues in her third assignment of error that the ALJ did not adequately explain his consideration of the supportability and consistency factors in his evaluation of Ms. Fox's and Mr. Gibson's medical opinions. (Doc. 12 at 12–17). In discussing the opinions provided

9

by Ms. Fox and Mr. Gibson, the ALJ said:

> Finally, I have considered the findings of [Plaintiff]'s treating pain management professionals. Rajene Fox, CNP, found that [Plaintiff] could sit for two hours in an eight-hour workday and could stand and/or walk for less than two hours in an eight-hour workday. She found that [Plaintiff] should be able to change positions at will. Ms. Fox found that [Plaintiff] would require the ability to walk around for five minutes of every 60 minutes. Further, she found that [Plaintiff] would require 15-minute breaks every two to three hours because of muscle pain, weakness and numbness. She found that a cane was required for ambulation due to imbalance, pain and weakness. Finally, she found that [Plaintiff] would have both good and bad days; would be off task 25 percent of a typical workday; and would be absent more than four days per month (Exhibit 18F). Similarly, Todd Gibson, PA-C found that [Plaintiff] could sit for four hours in an eight-hour workday and stand and/or walk for two hours in an eight-hour workday. He found that [Plaintiff] should be allowed to change positions at will. He found that [Plaintiff] would require 10 minutes of walking every 60 minutes and that [Plaintiff] would, "on average" require 30 minutes of unscheduled breaks. He found that [Plaintiff] would require a cane. Finally, he found that [Plaintiff] would be off task 25 percent of a workday and be absent about four days per month (Exhibit 22F).
>
> The opinions of Ms. Fox and Mr. Gibson were made almost a year subsequent to [Plaintiff]'s accident and alleged onset date. While I have considered their findings, those regarding unscheduled breaks, time off task and absenteeism are not persuasive, as they are not well-supported by the objective evidence. [Plaintiff]'s lower extremity injuries, as discussed herein, are well documented, but so is the relatively successful treatment of same (Exhibits 6F, page 7; 8F, pages 14, 19, 24, 29, and 34; 18F, page 2; and 22F, page 2). It is correct that she has substantial resultant limitations, including standing and walking, but these have been accounted for by restriction to no more than two hours per work day, as well as by related necessities of cane use, position changes, and foot elevation. Further, the residual functional capacity has provided for significant time off task in addition to normal breaks in part to allow for further alternation of position if she deems it necessary.

(R. at 27–28). Plaintiff suggests that the "ALJ did not actually compare anything in the record to the opinions provided by Ms. Fox and Mr. Gibson," but "[i]nstead, the ALJ pointed to some undefined level of improvement[] and claimed that the record was inconsistent with their findings." (Doc. 12 at 16). Indeed, as Plaintiff asserts, the ALJ did not expand upon his determination that there was a conflict between Ms. Fox's and Mr. Gibson's medical opinions and the objective evidence of the successes in treatment to Plaintiff's lower extremities. But an ALJ

10

is not required to repeat his analysis of the evidence in his evaluation of a medical opinion. *Carlene C. v. Comm'r of Soc. Sec. Admin.*, No. 3:20-CV-245, 2022 WL 278168, at *5 (S.D. Ohio Jan. 31, 2022); *see Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) (noting that the ALJ's entire decision must be considered).

Here, the ALJ extensively considered Plaintiff's medical record in determining her RFC. The ALJ considered records documenting Plaintiff's chronic pain, use of a cane, numbness, and difficulty with prolonged sitting or standing. (R. at 21–29 (citing R. at 254–61, 403–15, 423, 466, 471, 476, 481, 486, 593–935, 1171–1950, 1988–989, 2002, 2044, 2050–2057, 2069)). But the ALJ also noted that Plaintiff had normal strength, her gross motor and sensory functions were intact, and her serious leg injuries responded well to treatment. (R. at 22, 25, 27 (citing R. at 300–41, 408, 412, 536, 616, 1399, 1548, 1765)).

Still more, Ms. Fox's and Mr. Gibson's opinions as to Plaintiff's functional limitations in work environments consisted largely of checkbox and circle responses. (R. at 2042–043, 2067–068). Such conclusions without narrative explanations are "weak evidence at best," *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 475 (6th Cir. 2016), and an ALJ is not bound by any conclusory statements from doctors, never mind statements without objective support. *See Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). The Court will not disturb the ALJ's RFC determination solely because a two-page subjective medical statement—with no citations to objective medical records, only limited written responses, and primarily checked boxes and circle responses—suggested more restrictive limitations, especially where the ALJ otherwise supported his analysis.

### B. Use of an assistive device

11

In this case, the ALJ found that an assistive device was medically necessary for ambulation. But Plaintiff contends that "[t]he ALJ did not include a need to use the device for maintaining balance. This is problematic because the records established a need for the assistive device for both ambulation and balance." (Doc. 12 at 10–11). Specifically, Plaintiff says that the ALJ should have considered Ms. Fox's and Mr. Gibson's opinions that Plaintiff would need a cane for "imbalance, pain[,] and weakness." (Doc. 12 at 11 (citing R. at 2042, 2068).

But the ALJ clearly considered Ms. Fox's and Mr. Gibson's opinions. He used the same language as their medical opinion in finding that Plaintiff must be allowed to use a cane when walking because she "continues to use a cane to assist for reported periods of pain, imbalance, and weakness." (R. at 22, 24). And, notably, the ALJ specifically cites Ms. Fox's and Mr. Gibson's opinions in the RFC determination—which included more limitations to the lower extremities than the opinion of a medical expert who testified at Plaintiff's hearing and had reviewed her entire medical record, "given the severity of the claimant's injuries and the reports of treating physicians noting cane usage." (R. at 26 (citing R. at 2042–049, 2067–074). The Undersigned questions what more Plaintiff wants.

At bottom, Plaintiff claims that the ALJ should have done more but fails to identify how adding the requirement of using a cane for balance, in addition to using it for walking, would change the disability determination. This argument is unpersuasive, and the Undersigned will not disturb the ALJ's decision when he considered all medical evidence relating to the use of an assistive device and ultimately crafted significant parameters in the RFC to allow for Plaintiff's use of a cane. (*See* R. at 22–28 (citing R. at 403–15, 423, 466, 471, 476, 481, 486, 2044, 2069)).

## IV. CONCLUSION

Based on the foregoing, the Court **OVERRULES** Plaintiff's Statement of Errors (Doc. 12) and **AFFIRMS** the Commissioner's decision.

IT IS SO ORDERED.

Date: February 27, 2023  /s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE

13